NEAL H. HOWARD & ASSOCIATES,
P.C., Plaintiff

v.

CAREY & DANIS, LLC, Thomas J.
Carey, Individually, and William F.
Sasser, Individually, Defendants

No. 4:02–CV–51–3.

United States District Court,
M.D. Georgia,
Columbus Division.

Feb. 11, 2003.

William Dixon James, D. Shifley Robinson, Columbus, GA, Christopher Adams, Neal Henry Howard, Atlanta, GA, for Plaintiff.

Lawrence S. Burnat, Jason W. Graham, Atlanta, GA, C. Morris Mullin, Columbus, GA, for Defendants.

## ORDER

LAND, District Judge.

The Court presently has pending before it Defendants' Motion for Summary Judgment. The Court finds that there are no genuine issues of material fact to be tried regarding Defendants' accord and satisfaction defense, and that Defendants are entitled to judgment as a matter of law. Therefore, Defendants' Motion for Summary Judgment is granted.

### FACTUAL BACKGROUND

This case arises from a fee dispute between two law firms, Neal H. Howard & Associates, P.C., ("Howard & Associates") and Carey & Danis, LLC ("Carey & Dan-

is").[1] Carey & Danis, a Missouri law firm, served as lead counsel, along with two other law firms who are not involved in the present litigation, in a class action involving certain late fees charged by various cable television companies. In the course of this class action, Carey & Danis associated Howard & Associates, a Georgia law firm, as local counsel for the Georgia claims.

The class action was ultimately settled, with Carey & Danis receiving a proportionate share of the settlement in their role as one of the lead counsel in the suit. The parties agree that there was never a written agreement as to how Howard & Associates would be compensated as local counsel, but they did reach an oral understanding.[2] This dispute involves the amount of compensation owed to Howard & Associates pursuant to the oral agreement. Howard & Associates maintains it was to receive one-third (1/3) of the total amount of fees received as part of the class action settlement which were allocated to Georgia. Carey & Danis, on the other hand, contends that Howard & Associates was to receive one-third (1/3) of the fees received by Carey & Danis which were allocated to Georgia claims.

This dispute over the amount of fees to be paid to Plaintiff first arose when Howard & Associates received a check and accompanying letter from Carey & Danis on March 9, 2001. In that correspondence addressed to Mr. Howard, Mr. John Carey, a partner at Carey & Danis and a named Defendant in this lawsuit, stated that the $32,109.09 check enclosed with the letter "represent[ed Howard & Associ-

---

1. The Court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

2. The oral agreement apparently resulted from negotiations between Mr. Howard on behalf of Howard & Associates and Mr. William Sasser on behalf of Carey & Danis. It appears that Mr. Sasser, a named Defendant in this suit, was not employed by, or a partner in, the firm of Carey & Danis, but the parties agree that he acted on the firm's behalf when negotiating with Mr. Howard.

ates'] share of the fees in the Charter/Marcus cable television 'late fee' litigation." The letter also contained an itemized accounting of how the amount paid to Howard & Associates was calculated.[3] Prior to this tender of Howard & Associates' share of the fees, no bona fide dispute existed as to the amount of fees owed to Howard & Associates. In fact, there were no discussions between the parties as to the amount of fees after the settlement of the class action litigation and prior to the March 9 correspondence from Carey to Howard.

Upon receipt of the March 9 correspondence, Mr. Howard promptly responded with a letter dated March 13, 2001. In his letter, Mr. Howard disputed that the $32,109.09 amount calculated by Carey & Danis reflected the full amount due Howard & Associates for its work as local counsel in the class action. Howard not only disputed the fact that his firm was apparently allocated only one-third (1/3) of the amount paid to Carey & Danis for the Georgia claims rather than one-third (1/3) of the total fees allocated to Georgia claims, but he also disagreed with the dollar amount allocated to all Georgia claimants generally. Mr. Howard then requested a full breakdown regarding how the fees were disbursed and an explanation of how the amount allocated to Georgia claimants was calculated.

Following Carey & Danis' receipt of Mr. Howard's letter of March 13, the parties apparently exchanged voice mail messages for a number of weeks before Mr. Carey sent Mr. Howard another letter on April 24, 2001, effectively reconfirming his firm's position that the March 9 check represent-

ed the full amount due to Howard & Associates. In this letter, Mr. Carey wrote:

[Howard & Associates] has received more than full and fair compensation for the services rendered in the [cable late fee class action], and were paid strictly in accordance with any written agreements or arrangements that were made concerning the allocation of fees. Your assertion that your firm should receive fees for which my firm did NOT receive any fees is, in my view, simply untenable.

At the time Howard received this letter, he still had not cashed the Carey & Danis check that had been tendered on March 9. He did not cash the check until June 12, 2001, approximately a month and a half after receiving Carey & Danis' April 24 correspondence. When he deposited the check on June 12, Howard restrictively indorsed the check as follows:

Neal H. Howard & Assoc. P.C. dispute that the amount stated above is the entire amount due Neal H. Howard & Assoc. P.C. under the fee sharing arrangement for services rendered. By depositing this check Neal H. Howard & Assoc. P.C. does not waive its right to seek amount [sic] due and expressly reserve the right to seek additional compensation.

After depositing the check, Mr. Howard attempted to reach Mr. Carey by phone on various occasions, but was unable to do so until October 25, 2001. At that time, Mr. Howard claims to have reiterated his dispute over the amount paid to his firm. In response, Mr. Carey apparently assured Mr. Howard that he would speak with Mr.

---

**3.** The calculation of the amount paid to Howard & Associates was described by Mr. Carey in his March 9, 2001, letter as follows:

| | |
|---|---|
| Georgia fees | |
| ($1 × No. of Subscribers) | $349,047.00 |
| C & D/Local Counsel Share (1/3) | 116,337.36 |
| Less Amounts to Independents & | |
| Objectors (17.2%) | 20,010.02 |
| Net Due C & D/Local Counsel | 96,327.34 |
| Allocation to Local Counsel | 32,109.09 |
| Expenses of Local Counsel | 0.00 |
| Total Paid to Local Counsel | 32,109.09 |

William Sasser about the terms of the oral arrangement between the parties and get back with Mr. Howard. He never did so, and there was no further communication between the parties until this action was filed on March 5, 2002.[4]

In this action, Howard & Associates seeks to recover the amount of fees it claims it is owed pursuant to the oral agreement between it and Defendants. Defendants seek summary judgment, claiming that they tendered all of the fees owed to Plaintiff and that Plaintiff's acceptance of those fees constitutes an accord and satisfaction.[5]

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, shows that no genuine issues of material fact exist and that the moving party is therefore entitled to judgment as a matter of law. *Fed. R.Civ.P.* 56(c). The moving party bears the initial burden of showing no such issues exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the burden then shifts to the nonmoving party to produce evidence that shows a genuine issue of material fact exists on issues as to which the nonmovant bears the burden of proof at trial. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). In analyzing a motion for summary judgment, the Court must view all the evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.*

### B. Accord and Satisfaction

Under Georgia law,[6] an "[a]ccord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed." O.C.G.A § 13–4–101 (1982). Georgia statutory law further provides that where a creditor accepts a check for less than the total amount of indebtedness which is marked "payment in full" or with equivalent language, no accord and satisfaction results unless: (1) "[a] bona fide dispute or controversy exists as to the amount due" or (2) "[s]uch payment is made pursuant to an independent agreement between the creditor and debtor that such payment shall satisfy the debt." O.C.G.A. § 13–4–103(b) (1982).

 These statutory provisions have been consistently construed by the Georgia Courts to establish the following well-recognized principle:

> In Georgia, the general rule on accord and satisfaction is that "if a debtor remits to the creditor a sum of money, less than the amount actually due, upon the condition, either express or implied, that it is in satisfaction of the creditor's claim, and the latter accepts and retains the money, an accord and satisfaction results, and this is true whether the demand be liquidated or unliquidated, disputed or undisputed."

4. This case was originally brought in the Superior Court of Muscogee County, Georgia, but was later removed to this Court by Defendants.

5. Defendants also argue that the oral fee splitting agreement is unenforceable under Georgia law. In light of the Court's ruling that an accord and satisfaction occurred, it is unnec-essary for the Court to address this contention.

6. This case is before the Court based upon diversity jurisdiction; therefore, state (Georgia) substantive law applies under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny.

*Hadson Gas Sys., Inc. v. Atlanta Airlines Terminal Corp.*, 200 Ga.App. 363, 364, 408 S.E.2d 454, 455 (1991) (internal citations omitted); *see also, e.g., Golden Peanut Co. v. Bass*, 249 Ga.App. 224, 230–31, 547 S.E.2d 637, 643–44 (2001) (discussing propriety of jury instruction on accord and satisfaction); *Rabenstein v. Cannizzo*, 244 Ga.App. 107, 107, 534 S.E.2d 847, 848 (2000) (affirming grant of summary judgment where insured cashed settlement check from liability insurer); *Chrietzberg v. Kristopher Woods, Ltd.*, 162 Ga.App. 517, 518, 292 S.E.2d 100, 101–02 (1982) (affirming summary judgment in favor of landlord after tenant cashed a check from landlord after disputing its amount where payment was accompanied by itemized accounting). Simply put, when payment is made upon condition, *e.g.*, the condition that, if accepted, it will fulfill the debtor's obligation to the creditor, "the acceptance of the payment carries with it the acceptance of the condition." *Hartline–Thomas, Inc. v. H.W. Ivey Constr. Co., Inc.*, 161 Ga.App. 91, 94, 289 S.E.2d 296, 299 (1982) (internal citations omitted). Furthermore, the rule applies whether or not the creditor protests that the amount received is less than he is due. *Id.* The creditor must either refuse the payment or accept it along with the attached condition. *Id.* "If he accepts it, he accepts the condition also, notwithstanding any protest he may make to the contrary." *Id.* (internal citations omitted).

■ In the case at bar, on March 9, 2001, Carey & Danis tendered to Howard & Associates what it considered full and final payment of all fees owed to Howard & Associates. Howard & Associates im-mediately disputed that the tender represented full payment. However, while Howard & Associates clearly disputed the amount of the payment *after* it received the tender, no bona fide dispute existed *prior* to the tender. Therefore, based upon the Court's understanding of Georgia law, Carey & Danis' March 9 tender cannot form the foundation for an accord and satisfaction. *See Franklin v. Cummings*, 181 Ga.App. 755, 756–57, 353 S.E.2d 626, 627–28 (1987) (holding that no accord and satisfaction occurred because there was no bona fide dispute prior to the tender, even though a bona fide dispute existed prior to the creditor's cashing of the check).[7]

■ The Court's finding that the March 9 tender cannot form the basis for an accord and satisfaction does not end the inquiry. Had Howard & Associates deposited the check under protest upon its initial receipt of it, then under *Franklin v. Cummings* no accord and satisfaction would have occurred. Howard & Associates, however, did not follow this course. Instead of depositing the check upon receipt, it protested the amount of the payment and held the check. After Howard & Associates protested the amount of the check on March 13, 2001, Carey & Danis responded on April 24, 2001, that the check represented full and final payment for any fees arising from the class action litigation. As of that date, April 24, it is clear that a bona fide dispute existed between the parties regarding the amount of fees owed to Howard & Associates. Moreover, the Court finds that Carey & Danis' April 24, 2001, correspondence constituted a retender of the previous payment, which still had not been accepted (cashed) by

---

7. The Court observes that it finds little justification for the Georgia Courts' requirement that a bona fide dispute exist *prior* to the tender. The better rule would be that a bona fide dispute exist *prior* to the creditor's acceptance of the tender. Such a rule is consistent with the statute (O.C.G.A. § 13–4–103(b)(1)) and would also place substance over form. However, this Court is duty bound to follow Georgia law which clearly provides that an accord and satisfaction cannot occur if there was no dispute at the time of tender, even if a dispute clearly existed prior to the creditor's ultimate acceptance (cashing) of the tender.

Howard & Associates. On June 12, 2001, Howard & Associates finally cashed the check which had been initially tendered on March 9 and then retendered on April 24. Since a bona fide dispute existed at the time of the retender on April 24 and Howard & Associates nevertheless deposited the check on June 12, an accord and satisfaction occurred as of that date.

██ The restrictive indorsement placed on the check and Mr. Howard's subsequent discussions with Mr. Carey disputing the amount of payment do not alter this result. *See Hartline–Thomas, Inc.,* 161 Ga.App. at 93–94, 289 S.E.2d at 298–99 (creditor's alteration of condition expressed on check does not preclude summary judgment in favor of debtor based upon accord and satisfaction defense where bona fide dispute exists). In order to protect his right to further dispute the amount his firm received for its role in the class action litigation, Georgia law required Mr. Howard, once the bona fide dispute arose, to return the check to Carey & Danis rather than deposit it. Georgia law clearly provides that a creditor faced with a payment of less than the full amount of a debt must either reject the payment entirely or accept it along with the condition. He may not accept the check as partial payment then try to reserve his rights to further compensation by placing restrictions on his acceptance. To allow such changes to a debtor's expressed or implied condition would be to allow the creditor to form a contract with the debtor without the debtor's knowledge and consent. *Hartline–Thomas, Inc.,* 161 Ga.App. at 94, 289 S.E.2d at 299 (citing *Thompson v. Hecht,* 110 Ga.App. 505, 506–07, 139 S.E.2d 126 (1964); *Perma Ad Ideas v. Mayville,* 158 Ga.App. 707, 282 S.E.2d 128 (1981)).

Under the undisputed facts, a bona fide dispute existed when Carey & Danis retendered the check to Howard & Associates. Howard & Associates chose to cash the check, despite knowing that Carey & Danis contended that it represented full and final payment. Howard & Associates' actions completed the accord and satisfaction. Accordingly, Defendants are entitled to summary judgment.[8]

### CONCLUSION

For the reasons described above, Defendant's Motion for Summary Judgment is granted.

---

8. Because the Court finds Defendants' Motion for Summary Judgment must succeed, all other motions presently pending before the Court are dismissed as moot. Plaintiff's remaining claims against Defendants are likewise rendered moot as a result of the Court's Order.